UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO SELF,<br>BOP #65012-298,<br><br>                       Plaintiff,<br><br>    vs.<br><br>WARDEN, MCC;<br>Mr. RICO, Custody Officer,<br><br>                      Defendants. | Case No.: 3:18-cv-1451-LAB-MDD<br><br>**ORDER DISMISSING CIVIL ACTION FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND 28 U.S.C. § 1915A(b)** |

Guillermo Self ("Plaintiff"), currently incarcerated at the Federal Correctional Institution in Lompoc, California,[1] is proceeding pro se in this *Bivens* action, which he originally filed pursuant to 42 U.S.C. § 1983. He has been granted leave to proceed *in forma pauperis* ("IFP") and an opportunity to amend his complaint in order to state a claim upon which relief can be granted. His attempt to do so falls short, so the Court now dismisses his case.

---

[1] Plaintiff was detained at the Santa Ana Jail at the time he filed his Complaint, but was later transferred to USP-Victorville before he arrived at FCI–Lompoc on August 27, 2018. *See* ECF Nos. 4, 5.

1

## I. Procedural History

In his original Complaint, Plaintiff claimed an unidentified Warden and Custody Officer Rico at the Metropolitan Correctional Center ("MCC") in San Diego, California, violated his "right to medical care" after he suffered a leg injury in the facility's kitchen on November 7, 2017. (*See* Compl., ECF No. 1 at 1-3.) He sought $50,000 in general and punitive damages. (*Id.* at 7.)

On September 19, 2018, the Court liberally construed Plaintiff's claims to arise under general federal question jurisdiction and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 399 (1971), rather than 28 U.S.C. § 1983 since he alleged constitutional violations by persons acting under color of federal rather than state law, but nevertheless dismissed Plaintiff's Complaint *sua sponte* and in its entirety for failing to state a claim. (*See* ECF No. 6 at 6-11, *citing* 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)). In its detailed Order, the Court reviewed Plaintiff's allegations as to both the Warden and Officer Rico, provided notice of his pleading deficiencies, and granted him 45 days leave in which to fix them. (*Id.* at 9-11.) Plaintiff was cautioned that his Amended Complaint would supersede his original pleading, and that any claim not re-alleged against any Defendant would be waived. (*Id.* at 12.)

Plaintiff has since filed a document entitled as his Amended Complaint (ECF No. 7) (hereafter "FAC"), but it includes no caption identifying the parties, and fails to meet any of Fed. R. Civ. P. 8(a)'s minimal pleading requirements. *See* Fed. R. Civ. P. 10(a) ("Every pleading must have a caption with the court's name, a title, [and a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties ...."); Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, .... (2) a short and plain statement of the claim showing the claimant is entitled to relief; and (3) a demand for the relief sought.").

Because Plaintiff is still proceeding without counsel, however, and "is doing [his] best to answer," (ECF No. 7 at 14), the Court will likewise do its best to liberally construe the facts as he has re-alleged them in light of the legal requirements for pleading a

constitutional claim under *Bivens* and its progeny, and determine whether his FAC, "however inartfully pleaded," *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), is nevertheless sufficient to survive the initial screening required by 28 U.S.C. § 1915(e)(2) and § 1915A.

## II. Screening of Amended Complaint

As Plaintiff now knows, the Prison Litigation Reform Act ("PLRA") requires review of all complaints filed by persons proceeding IFP, as well as those filed by persons, like him, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," at the time of filing "as soon as practicable after docketing." *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under the PLRA, the Court must *sua sponte* dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

### A. Standard of Review

"The purpose of § 1915[] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *accord Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

Every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

While a plaintiff's factual allegations are taken as true, courts "are not required to indulge in unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), but they may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Even before *Iqbal*, "[v]ague and conclusory allegations of official participation in civil rights violations" were not "sufficient to withstand a motion to dismiss." *Id.*

B. <u>Allegations in Amended Complaint</u>

In general, the allegations in Plaintiff's FAC, while a bit more drawn out, are not materially different than those in his original Complaint. (*Compare* Compl., ECF No. 1 at 3-5, *with* FAC, ECF No. 7 at 1-13.)

Plaintiff claims, as he did previously, that on November 7, 2017, at approximately 10:30 a.m., while he was detained at MCC and washing dishes and pans in the facility kitchen, a "7 foot tall, 100-150 pound[] food carrier cart fell upon [him] from behind"

///

and caused him to "drop[] to [his] knees on the floor." (*See* FAC, ECF No. 7 at 1.)[2] Plaintiff contends he "sustained injuries to [his] legs and [his] upper and lower back, both knees, and right hip," but his fellow inmates removed the cart, and he "stood up and started limping towards the C/O's office, about 15 feet" away. (*Id.* at 1-2.) Mr. Rico, the officer "in charge of the kitchen," came out of his office, "got upset," "started screaming," and asked if Plaintiff "already ha[d] a mess[ed] up leg." (*Id.* at 2.)[3]

Rico then instructed Plaintiff to sit down, remove his work gear, and wait. (*Id.* at 3.) Plaintiff complied, noticed his "left leg was bruised and swollen," and after 45 minutes, asked Rico to "send [him] to medical." (*Id.* at 3-4.) Rico replied, "You are not going to medical, you are going to be escorted back to your housing unit and to the unemployment line." (*Id.* at 4.) Plaintiff alleges Rico "didn't even ask [him] how [he] felt, or even take a look at [his] leg," and "just didn't care." (*Id.*)

Another C/O arrived to escort Plaintiff to his housing unit. There, the C/O on duty, Combs, informed him that he "had a legal visit waiting for him." (*Id.* at 4.) Plaintiff told Combs about "the accident," and showed him his left leg. Combs advised that he "go ahead and take care of [his] legal visit," while Combs "call[ed] medical." (*Id.* at 5.)

///

---

[2] The Court continues to take judicial notice that Plaintiff was a federal pretrial detainee at the time he was injured. *See United States v. Self*, S.D. Cal. Criminal Case No. 3:17-cr-03691-JLS-1 (ECF Nos. 1-3, 13-15). Plaintiff pleaded guilty and was sentenced to the custody of the Bureau of Prisons on July 13, 2018. *Id.,* ECF Nos. 33, 41, 43-44; *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (court may take "judicial notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (citation and internal quotations omitted).

[3] Plaintiff admits he had a rod inserted in his right leg as the result of a broken femur sustained one year before, and that Rico knew this "because every time [he] came to work and returned to [his] housing unit," the metal detector "would activate[] and beep." (FAC, ECF No. 7 at 3.)

Plaintiff then met with his attorney, Mayra L. Garcia, for ten minutes, "to talk … about [his] arraignment" set for November 9, 2017. (*Id.*) When Garcia noticed Plaintiff was limping, he told her "everything from beginning to end about the accident and how rude … Rico behave[d]," and Garcia advised Plaintiff to seek medical attention. (*Id.*)

Combs returned, told Plaintiff to "wait[] [i]n the dayroom," and that "medical help was on the way." (*Id.*) After waiting three hours, Plaintiff approached his case manager, Kelly, complained about the delay, and asked her to help. (*Id.* at 6.) Kelly advised Plaintiff he "need[ed] to send an email and request a doctor visit if [he] want[ed] to see a doctor," and so he did. (*Id.*)

After dinner, the "call sick cart came," and Plaintiff asked the nurse to examine his left leg and for a pain reliever. (*Id.* at 7.) "She saw it and said, 'You must wait to see a doctor because I can't prescribe any medicine, I'm not authorized.'" (*Id.*) On the next day, November 8, 2017, Plaintiff claims he asked "every new C/O on duty to give [him] a pain reliever," but "there wasn't anything they could do." (*Id.*)

On November 9, 2017, two days after his injury and presumably after he was arraigned, Plaintiff was transferred to "GEO-WRDF (Western Regional Detention Facility)." (*Id.*) Plaintiff claims he "was in a lot of pain with the [sha]ckles that the Marshal[]s had put on [him]," and "showed them [his] swollen and bruised leg" while he was "taken to the court cells." (*Id.* at 8.)

When he arrived at GEO-WRDF late that evening, Plaintiff again "told the lady C/O on intake the story of the accident," and was referred to the nurse, who like everyone else, told him he'd need to see a doctor before any pain reliever could be prescribed. (*Id.* at 8-9.)

On November 17, 2017, Plaintiff "got to see the doctor on duty," who prescribed 800 mg of Motrin, but "no x-rays or MRIs." (*Id.* at 9.)

Finally, Plaintiff claims to have written two letters during the "months of January and February 2018 to the Warden of MCC letting him know about [his] accident at the MCC kitchen," and "asking him to send someone to come and see [him] at GEO-WRDF

to try to get to a settlement." (*Id.*) When Plaintiff received no response, he "filed this lawsuit asking the Court to grant[] [him] $50,000." (*Id.* at 11.)

C. Discussion

1. *Standard of Review*

As it did in its original screening Order, the Court will continue to evaluate Plaintiff's inadequate medical care claims against Custody Officer Rico and MCC's unidentified Warden under *Bivens*, since he alleges to have been denied medical attention while he was a federal pretrial detainee and in their custody. *See* ECF No. 6 at 6-7 (citing *Navarette v. Pioneer Med. Ctr.*, No. 3:12-CV-0629-WQH-DHB, 2012 WL 4178682, at *3 (S.D. Cal. Sept. 17, 2012) (liberally construing prisoner's § 1983 Complaint to arise under *Bivens* because Plaintiff alleged constitutional violations by a federal actors).

"In *Bivens*, the Supreme Court 'recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Vega v. United States*, 881 F.3d 1146, 1152 (9th Cir. 2018) (quoting *Hernandez v. Mesa*, __ U.S. __, 137 S. Ct. 2003, 2006 (2017) (citation omitted)). *Bivens* arose in the context of a Fourth Amendment violation, however, and the Court has "only expanded [*Bivens'*] 'implied cause of action' twice." *Id.* (quoting *Ziglar v. Abbasi*, __ U.S. __, 137, S. Ct. 1843, 1854 (2017)). First, the Court recognized a *Bivens* remedy in the context of a Fifth Amendment claim based on gender discrimination. *Id.* (citing *Davis v. Passman*, 442 U.S. 228 (1979)). Second, the Court expanded *Bivens* to Eighth Amendment inadequate medical care claims raised by a federal prisoner's decedents. *Id.* (citing *Carlson v. Green*, 446 U.S. 14, 24-25 (1980) (concluding that "[a] federal official contemplating unconstitutional conduct [in the context of an Eighth Amendment] medical care [claim]… must be prepared to face the prospect of a *Bivens* action.")).[4]

---

[4] The Court continues to presume at this preliminary stage of the case and for purposes of screening Plaintiff's FAC pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A *only*, that inadequate medical care claims arising before conviction and sentence, and therefore

"In the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under Rev. Stat. § 1979, 42 U.S.C. § 1983.'" *Iqbal*, 556 U.S. at 675-76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)). Plaintiffs who seek to challenge the sufficiency of medical treatment provided while in pretrial detention pursuant to 28 U.S.C. § 1983 must allege facts sufficient to show that:

> (i) [each] defendant made an intentional decision with respect to the conditions under which [he] was confined; (ii) those conditions put [him] at substantial risk of suffering serious harm; (iii) [each] defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, [each] defendant caused [his] injuries.

*Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (in considering the conditions of pretrial detention, courts consider whether the conditions amount to punishment); *Castro v. Cnty of Los Angeles*, 833 F.3d 1060, 1067-71 (9th Cir. 2016) (en banc) (setting forth elements of Fourteenth

---

subject to the Fifth Amendment's Due Process Clause as opposed to the Eighth Amendment's Cruel and Unusual Punishments Clause, are not "different in a meaningful way" from those found sufficient to justify a *Bivens* remedy as recognized by the Supreme Court in *Carlson*. *See Abbasi*, 137 S. Ct. at 1859; *Vega*, 881 F.3d at 1153. The Court further notes, however, that the potential viability of such a claim is yet unresolved. *See Abbasi*, 137 S. Ct. at 1865 (remanding *Bivens's* "special factor analysis" to Court of Appeals regarding Warden's potential liability for pretrial detention abuse and prolonged detention claims arising under the Fifth Amendment); *but see Laurent v. Borecky*, No. 17-CV-3300 (PKC)(LB), 2018 WL 2973386, at *5 (E.D.N.Y. June 12, 2018) ("While this case admittedly also presents a different constitutional right at issue—i.e., deliberate indifference to a detainee's medical needs under the Fifth Amendment instead of the Eighth Amendment—unlike [*Abbasi*], it bears an extremely strong 'resemblance to [one of] the three *Bivens* claims the [Supreme] Court has approved in the past: . . . a claim against prison officials for failure to treat an inmate's asthma."); *Abbasi*, 137 S. Ct. at 1855 (citing *Bivens, Davis,* and *Carlson* as "the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself.").

Amendment failure-to-protect claim by pretrial detainee); *cf. Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (prison officials act with deliberate indifference under the Eighth Amendment only if they know of and disregard an excessive risk to the prisoner's health); *see also Blankenship v. Shinn*, 696 Fed. App'x 237-238 (9th Cir. 2017) (unpublished) (affirming dismissal of federal pretrial detainee's inadequate medical care claims pursuant *Bivens* because, "under any potentially applicable standard, [plaintiff] failed to allege facts sufficient to show that [defendant] knew of or disregarded an excessive risk to [plaintiff's] back problem.").

### 2. *Personal Liability – Unidentified MCC Warden*

In its initial screening Order, the Court *sua sponte* dismissed Plaintiff's claims against MCC's Warden because Plaintiff only alleged he was "respons[i]ble for his institution's problems." (*See* Compl., ECF No. 1 at 2; ECF No. 6 at 9.) Plaintiff was advised that vicarious liability is inapplicable to *Bivens* suits, therefore he must allege facts sufficient to show how the Warden was personally liable for his injury. (*See* ECF No. 6 at 9 (citing *Iqbal*, 556 U.S. at 676-78)).

Plaintiff's FAC fails to address this critical pleading deficiency. Instead, Plaintiff simply repeats his claim that "it is [the Warden's] responsibility to see that he g[o]t medical care," and that he sent the Warden two letters, months after he was injured and in an effort to settle the case, "with no success." (*See* FAC, ECF No. 7 at 13.) Because Plaintiff must instead "allege with at least some degree of particularity overt acts … the [Warden] engaged in" which caused a violation of his constitutional rights, *Jones v. Comm'ty Redev. Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), and has not, his FAC still fails to state a plausible claim for relief against MCC's Warden. *See Iqbal*, 556 U.S. at 676, 678.

### 3. *Custody Officer Rico*

When it comes to Officer Rico, Plaintiff's amended allegations fare no better—for he still fails to include facts sufficient to plausibly show Rico's actions on November 7, 2017 "put [him] at substantial risk of suffering serious harm," or that a "reasonable official

[in Rico's shoes] would have appreciated the high degree of risk involved" in failing to immediately summon medical care. *Gordon*, 888 F.3d at 1125.

Plaintiff claims, as he did in his original Complaint, only that after the food cart fell on him, he presented himself to Rico "limping," complaining of a bruised and swollen left leg, and requesting to be "sen[t] to medical." (*See* FAC, ECF No. 7 at 2.) Rico, however, only instructed him to remove his work gear, and wait for an escort back to his housing unit, where Plaintiff admits he immediately reported his injury to both Combs and Kelly, and was able to "send an email [to] request a doctor visit" that same day. (*Id.* at 4-6.)

And while Plaintiff claims Rico "just didn't care," a failure to care is at most negligent and not "objectively unreasonable," *Gordon*, 888 F.3d at 1125, given the relatively minor injury he claims to have sustained. Plaintiff complained of swelling and bruising, but he admits he was still able to walk, albeit with a limp, and his pain was not so severe or evident that it rendered him unable to consult with his lawyer soon after the incident. (*See* FAC, ECF No. 7 at 5.) Moreover, no other MCC official Plaintiff claims to have approached over the course of the next two days found his complaints so serious, or his injury so grave, as to require emergent attention. In fact, Plaintiff admits the GEO-WRDF doctor who ultimately treated him on November 17, 2017, found both an x-ray and MRI unnecessary, and merely prescribed Motrin. *See Gordon,* 888 F.3d at 1125 ("The defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'") (quoting *Castro*, 833 F.3d at 1071); *Iqbal*, 556 U.S. at 679 (determination of whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Thus, for all these reasons, Plaintiff's FAC, like his original Complaint, must be dismissed sua sponte and in its entirety because it continues to fail to state any claim upon which *Bivens* relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b)(1).

/ / /

D. Leave to Amend

Plaintiff has already been provided a short and plain statement of his pleading deficiencies, as well as an opportunity to amend. Plaintiff admits his FAC is his "best effort" at addressing those failures, but to no avail. (*See* ECF No. 6 at 6-10; ECF No. 7 at 14.) Therefore, the Court finds further attempts to amend would be futile. *See Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of ... leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (internal quotation marks omitted) (second alteration in original)).

## III. Conclusion and Order

Accordingly, the Court:

1) **DISMISSES** this civil action without further leave to amend for failure to state a claim upon which *Bivens* relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

2) **CERTIFIES** that an IFP appeal would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), and

3) **DIRECTS** the Clerk of Court to enter a final judgment of dismissal and to close the file.

**IT IS SO ORDERED**.

Dated: February 8, 2019

Hon. Larry Alan Burns
Chief United States District Judge